JESSIE LEE STAMPS, a minor, by MARY L. STAMPS, his mother and next friend, Plaintiff-Appellee, *v.* ARTHUR L. CALDWELL, Defendant—(CORONET INSURANCE COMPANY, Citation-Defendant-Appellant.)

(No. 54724;

First District—July 6, 1971.

Haft, Shapiro & Haft, of Chicago, (Morris A. Haft and Joshua Landau, of counsel,) for appellant.

Arnstein & Levin, of Chicago, (Lawrence L. Kotin, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This was a citation proceeding instituted on behalf of minor plaintiff, Jessie Lee Stamps (hereinafter "plaintiff"), against citation-defendant Coronet Insurance Company (hereinafter "Coronet") to collect the amount of a default judgment entered for plaintiff and against defendant, Arthur L. Caldwell, Coronet's insured (hereinafter "Caldwell"), for personal injuries sustained by plaintiff in an automobile accident. Coronet interposed the defense of lack of cooperation on the part of Caldwell in violation of the terms of the policy of insurance. The trial court found that Coronet failed to prove lack of cooperation on Caldwell's part and entered judgment for plaintiff and against Coronet, for the use and benefit of Caldwell, in the amount of $3,000 plus costs of the action, from which judgment Coronet appeals. The trial court also entered an order denying a motion filed by plaintiff pursuant to Section 155 of the Illinois Insurance Code for reasonable attorneys' fees, from which order plaintiff has filed a cross-appeal. Ill. Rev. Stat. 1969, ch. 73, par. 767.

On April 1, 1964, Coronet issued an automobile insurance policy covering Caldwell which contained provisions, *inter alia,* that the insured shall cooperate with the insurer in all matters relating to accidents and legal actions instituted incident thereto, and that the insurer shall not be liable under the policy where there has not been full compliance by the insured with the terms of the policy.

On July 14, 1964, Caldwell notified Coronet that his automobile had injured plaintiff, a pedestrian, on July 13, 1964, and Coronet opened a file in the matter in the usual course of its business. The matter was assigned by Coronet to an adjuster and within several days a police accident report was obtained from the Chicago Police Department. On October 13, 1964, Coronet received a notice of attorney's lien from plaintiff's attorney, and five days later Coronet acknowledged receipt of the notice of lien. In December 1964, an attorney for Coronet requested of the plaintiff's attorney a list of the special damages incurred by plaintiff in the accident, and several telephone conversations followed between the attorneys.

On September 9, 1965, a personal injury action was filed by plaintiff against Caldwell, and the record reveals that personal service was obtained on Caldwell on January 26, 1966. It appears that in June 1966 a memorandum was dictated in the offices of Coronet which diarized the file to the end of December 1966. It further appears that on December 30, 1966, Coronet closed its file in this matter.

On May 15, 1968, the personal injury action was called for trial. No answer having been filed to the complaint and no party appearing on behalf of Caldwell on that date, the case was set for a prove-up on May 29, 1968. On the day the matter had been set for prove-up, plaintiff's attorney sent a letter by registered mail return receipt requested, to Coronet advising the latter of the pending action and of its anticipated disposition on May 29th, together with information concerning the time and the courtroom number of the prove-up. Receipt of the letter was acknowledged by Coronet, but apparently the letter was placed into the closed file or otherwise misplaced, and Coronet took no action on May 29th. The matter was proved up on that date and judgment was entered in the amount of $3,000 for plaintiff and against Caldwell. On July 1, 1968, plaintiff's attorney communicated by letter to Coronet that a judgment had been entered and requested payment from Coronet of the amount of the judgment, which Coronet failed to do.

This proceeding was instituted against Coronet on September 17, 1968. Coronet subsequently filed its answer, alleging that Caldwell had breached the terms of the policy of insurance by failing to notify Coronet of the service of the summons upon him in the personal injury action

at the time of service; that subsequent to the time that Coronet learned of the default judgment against Caldwell, Coronet attempted to elicit information from Caldwell in an effort to determine whether he was in fact served with summons in the personal injury action; that upon locating Caldwell and interviewing him on July 22, 1968, Coronet's investigator was told by Caldwell that he had not been served with a "subpoena" in the personal injury action; that an effort was made by Coronet's investigator to elicit more detailed information from Caldwell at a later date, and in the presence of a court reporter, which was rendered fruitless by Caldwell's hostile reaction and his lack of cooperation and which was also a violation of the terms of the policy of insurance; and that Coronet was not obliged to honor the obligations under the policy because of Caldwell's lack of cooperation.

At the trial of the matter it was brought out that Coronet, upon learning of the default judgment against Caldwell, retained an investigator to locate and interview Caldwell. Evidence was adduced that at the first interview on July 22, 1968, Caldwell stated in response to the investigator's questioning that he had not been served with a "subpoena" in the personal injury action; there was also evidence that when the investigator at a later date attempted to secure additional information concerning the service of papers upon Caldwell, the latter reacted in a heated manner and ordered the investigator and the accompanying court reporter off his premises.

Caldwell testified at trial that he did in fact receive a summons in the personal injury action and that he hand-delivered the summons to Coronet's offices in Chicago, as he did with the written accident report immediately following the accident. The witness further testified that the investigator who interviewed him asked him if he had received a summons in the personal injury action, to which question the witness stated he replied in the affirmative and that he hand-delivered it to Coronet. Caldwell testified that he had been involved with the courts in the past and that he knew the difference between a "summons" and a "subpoena." He further stated that he did not recall being asked by the investigator whether he had been served with a "subpoena" in the personal injury action.

The trial court found that Coronet failed to prove that it had not been served with a copy of the summons, that Caldwell responded to all questions asked of him by the investigator at the initial interview, and that consequently Coronet failed to prove lack of cooperation on Caldwell's part. The court further held that on the evidence presented, there was nothing to show that Coronet's refusal to pay the judgment was vexatious

and that therefore plaintiff was not entitled to attorneys' fees as requested.

Coronet contends that Caldwell's lack of cooperation in the conduct of the personal injury suit was a breach of the terms of the policy of insurance, entitling Coronet to disclaim liability under the policy, and that the trial court erred in holding that the evidence did not show a lack of cooperation on Caldwell's part. From a review of the entire record we are of the opinion that there was no breach of the policy terms by Caldwell such as would entitle Coronet to disclaim liability under the policy, and further that Coronet's present position is the result of its mishandling of its file in this matter.

■■ The record shows that Caldwell reported the injuries to plaintiff to Coronet immediately after the accident and that Coronet opened a file in the matter in its usual course of business. Contained in the Caldwell accident report was the fact that plaintiff was a minor, nine years of age. Correspondence between attorneys for Coronet and plaintiff continued over the latter part of 1964, and the personal injury action was filed in September 1965, with personal service being obtained upon Caldwell in January 1966. Caldwell testified that he was served with summons in the personal injury action and that he immediately hand-delivered the summons to Coronet's offices in Chicago after such service was before the trial court in this proceeding. Coronet, on the other hand, attempted to show that Caldwell failed to deliver the summons to it by the fact that the summons was not in their file, and by means of such negative evidence, Coronet sought to prove lack of cooperation on Caldwell's part. However, the trial court gave little credence to the integrity of Coronet's file in this matter, stating that the May 15th notice of the prove-up had been misplaced by Coronet and that other papers were not in the file. The trial court further stated that Caldwell appeared to be the type of individual who would hand-deliver a paper, as was evidenced by his hand-delivery to Coronet of the accident report. The evidence of Coronet failed to show lack of cooperation on Caldwell's part in informing Coronet of the pendency of the personal injury action such as to warrant a disclaimer of responsibility under the policy of insurance by Coronet. See *Gregory v. Highway Insurance Co.*, 24 Ill.App.2d 285.

Caldwell's alleged refusal to cooperate with Coronet's investigator after the default judgment had been entered was not only denied by Caldwell at trial, but he testified that he could not recall if he had been asked if he had been served with a "subpoena" in the personal injury action. The trial court noted that a person who was familiar with the courts, as Caldwell testified he was, knows the difference between a "summons" and

a "subpoena." The court also noted that the Coronet investigator "guardedly or otherwise avoided the use of the word 'summons.'" What was in fact said by Caldwell and by the investigator at the two interviews was a matter for the determination by the trier of fact. Thus, whether at the first interview Caldwell stated that he was not served with a "subpoena" in the personal injury action could have in no way aided Coronet in seeking to set aside the default judgment by way of a Section 72 petition, as it contends, and whether Caldwell refused to answer further questioning in that regard at the second interview could have in no way frustrated Coronet's efforts to open up the default judgment by that means.

From the record it is apparent that Coronet's position is the result of mishandling of its own file in this regard. Initially, Coronet closed the file two years after the date of the accident, although it had actual notice from the accident report that plaintiff was only nine years of age. It was further remiss in handling the matter when it misplaced the May 15th notice of the prove-up which it concededly received from plaintiff's attorney and when it failed to appear at the prove-up to protect its interests in the matter. Coronet cannot be allowed to place the burden of its own mistakes, classified by it as "mischance and inadvertence," upon its insured.

The cases cited by Coronet in support of its position are distinguishable on their facts from the case at bar. See *Gallaway v. Shied,* 73 Ill.App.2d 116; *Schneider v. Autoist Mutual Insurance Co.,* 346 Ill. 137; *Allstate Insurance Co. v. Keller,* 17 Ill.App.2d 44.

■■ As to the cross-appeal filed by plaintiff from the denial of the motion for attorneys' fees, it need only be said that Section 155 of the Illinois Insurance Code, pursuant to which the motion was filed, is designed to protect insured parties who are forced to expend attorneys' fees where the insurer refuses to pay under the terms of the policy or has sued to cancel the policy, and where such action on the part of the insurer was vexatious and without reasonable cause. The statute does not extend to third parties, such as plaintiff, and plaintiff cites no case law in support of his position. See *Keepes v. Doctors Convalescent Center, Inc.,* 89 Ill.App. 2d 36; Ill. Rev. Stat. 1969, ch. 73, par. 767.

For these reasons the judgment for plaintiff and against Coronet, and the order denying the plaintiff's motion for attorneys' fees are affirmed.

Judgment and order affirmed.

LYONS and GOLDBERG, JJ., concur.