VERN COLLIER *et al.*, Plaintiffs-Appellants, *v.* WAGNER CASTINGS CO. *et al.*, Defendants-Appellees.

Fourth District   No. 15036

Opinion filed April 5, 1979.

234

CRAVEN, J., dissenting.

Scheele, Murphy and Serkland, Ltd., of La Grange (James C. Serkland, of counsel), for appellants.

Samuels, Miller, Schroeder, Jackson and Sly, of Decatur (Jerald E. Jackson and Keith W. Casteel, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiffs, Vern Collier, Lois Collier, his wife, and Donald Collier, his son, sued defendants Wagner Castings Co. (WCC), John A. Wagner, John A. Wagner, Jr., and William Stogner in the circuit court of Macon County seeking damages for the infliction of physical injuries upon and a violation of the civil rights of Vern Collier and the extreme emotional distress of all the plaintiffs. They appeal from a judgment dismissing their first amended complaint upon defendants' motion.

The complaint contained four counts, each directed against all defendants. The thrust of plaintiffs' claims is that plaintiff Vern Collier was stricken while at work as an employee of WCC and was then given grossly inadequate treatment by defendant Stogner who was a licensed practical nurse or medical attendant for WCC. The individual defendants Wagner are alleged to be officers and directors of WCC. They and WCC are charged with making work rules and giving notices that contributed to the injuries inflicted upon Vern Collier. He is the only plaintiff as to counts I, II and III. Count I sounds in the tort of outrage and seeks compensation only for severe emotional distress. Count II also alleges elements of outrage but relies principally on allegations of a violation by defendants of section 8(a) of the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a)) and seeks recovery for severe emotional distress, physical harm and a violation of civil rights. Count III repeats the allegations of count II, alleges that defendants' conduct was wilful and wanton and seeks punitive damages. Count IV is brought by Lois Collier and Donald Collier, wife and son of Vern Collier. It repeats the allegations of count I, alleges that those plaintiffs were present and witnessed Vern Collier's suffering and grief and seeks damages for severe emotional distress and the loss of companionship and society of Vern Collier.

Defendants' motion to dismiss maintains as to each count that it: (1)

fails to state a cause of action; (2) fails to allege facts imposing a duty on defendants or a proper basis for a direct action by plaintiffs against them; and (3) is barred by sections 5(a) and 11 of the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, pars. 138.5(a) and 138.11). Filed supplemental to and in support of the motion was a copy of a settlement contract, lump-sum petition and order together with affidavit setting forth that a lump-sum settlement had been approved between Vern Collier and WCC for workmen's compensation for a heart attack with which Vern Collier was stricken on March 17, 1975, and which arose in the course of and out of his employment with WCC.

The trial court determined that each of the counts failed to state a cause of action. We agree. Counts I, II and III show on their face that they do not come within any exception to the provisions of sections 5(a) and 11 of the Act (Ill. Rev. Stat. 1973, ch. 48, pars. 138.5(a) and 138.11), which bar actions by the employee Vern Collier against his employer or its officers, directors or agents. Any claims in count IV for loss of consortium are barred under the ruling in *Bloemer v. Square D Co.* (1972), 8 Ill. App. 3d 371, 290 N.E.2d 699, and the count otherwise fails to state a cause of action.

At the time of the occurrence sections 5(a) and 11 stated in pertinent part as follows:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a).

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act * * *." (Ill. Rev. Stat. 1973, ch. 48, par. 138.11.)

In *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1, we ruled that the bar of section 5(a) can be claimed, as here, by officers and directors of a corporation for acts done in their official capacities.

The theory of our decision here is premised upon the precedent of *Komel v. Commonwealth Edison Co.* (1977), 56 Ill. App. 3d 967, 372 N.E.2d 842, and *Hayes v. Marshall Field & Co.* (1953), 351 Ill. App. 329,

115 N.E.2d 99. In each of these cases the court ruled as a matter of law that when an employee of the employer, even though that employee be a physician or surgeon, treats a co-employee for a "line of duty" injury and does so improperly, an action for the resulting injuries brought by the injured employee against the treating employee or the employer is barred by section 5 of the Act. *Komel* was a suit against both the employee and the employer, while suit in *Hayes* was brought only against the employer. Similar immunity would logically inure to officers, directors and agents.

The *Komel* court reasoned that (1) the test of whether an injury was received in the "line of duty" so as to be barred by section 5(a) is the same test as used to determine whether the employee's injury is compensable under the Act, citing *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 210 N.E.2d 209, and (2) an employer's liability under the Act includes that for aggravation of a compensable injury received during treatment, citing *Lincoln Park Coal & Brick Co. v. Industrial Com.* (1925), 317 Ill. 302, 148 N.E. 79.

■■ Plaintiffs allege in each count of the complaint that upon becoming stricken, Vern Collier was no longer in the "line of duty" and that his subsequent injuries did not arise in the course of and out of his employment. However, counts II and III specifically state that his original seizure arose in the course of and out of his employment. The complaint clearly sets forth that the misconduct alleged of defendants relates to their treatment of or failure to treat the seizure. Under *Komel*, as a matter of law, this conduct occurred while Collier was in the "line of duty." Accordingly, his injuries were compensable under the Act and common law action by him against the defendants was barred by the combined effect of sections 5(a) and 11 unless the complaint set forth a cause of action excepted from the restrictions of those sections.

Plaintiffs assert that the tort of outrage is not barred by sections 5(a) or 11. This type of action was first recognized in the State in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. There, a complaint was ruled to state a cause of action when it alleged that a defendant who had murdered plaintiff's husband had caused her extreme mental anguish and nervous exhaustion by his prior threats to commit the murder. Recently in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, a suit had been filed by a debtor claiming to have suffered extreme mental disturbance because of the creditor-finance corporation's tactics in seeking collection of a debt. Although the supreme court determined that the complaint did not state a cause of action, that court recognized the existence of a tort action for emotional distress and tested the complaint before it by the standards set forth in Restatement (Second) of Torts §46 (1965).

Section 46 describes the tort of outrage as follows:

"Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

    (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

    (b) to any other person who is present at the time, if such distress results in bodily harm."

Comment i to section 46 states:

"*i. Intention and recklessness.* The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in §500, in deliberate disregard of a high degree of probability that the emotional distress will follow."

Section 500 states:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

In *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 381, 329 N.E.2d 1, 8, we ruled that counts brought by an employee charging officers and directors of a corporation with wilful and wanton conduct causing line of duty injuries to employees were barred by the Act. The opinion then stated "the only injuries, if any, outside the Act would be intentional torts. See 2 Larson, *Workmen's Compensation* §68.13 (1973)." The quoted text states:

"Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury * * *.

* * *

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character."

■ We agree with Larson and the dictum of *Mier* that the bar of section 5(a) is applicable to a suit by an employee against his employer for outrage unless actual intent is alleged and proved. In *Alcorn v. Anbro Engineering, Inc.* (1970), 2 Cal. 3d 493, 86 Cal. Rptr. 88, 468 P.2d 216; *Beavers v. Johnson* (1965), 112 Ga. App. 677, 145 S.E.2d 776; and *Chuy v. Philadelphia Eagles Football Club* (E.D. Pa. 1977), 431 F. Supp. 254, cited by plaintiff as cases where action by an employee against the employer for emotional distress was not barred by provisions of the Workmen's Compensation Act of the jurisdiction, actual intent by the employer or his agent was an element of the cause of action. In *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 380 N.E.2d 924, an employee was permitted to sue at law a co-employee for a battery incurred in line of duty. Because of the intentional nature of the tort, section 5(a) was held to be no bar.

The instant complaint alleges gross negligence on the part of defendant Stogner but makes no allegation of an actual intent upon the part of any defendant to injure any plaintiff. Counts I and IV state that upon Vern Collier's seizure, a co-employee informed Stogner of Collier's extremely serious condition but that Stogner advised the co-employee to have Collier walk to an aid station although that would have involved walking a substantial distance and then climbing some stairs. The balance of the allegations are as summarized in this and succeeding paragraphs. When the co-employee advised that Collier could not walk, Stogner advised the co-employee to carry Collier to the aid station and upon being told that could not be done, Stogner delayed in coming to Collier. Upon arriving and finding Collier with typical symptoms of a heart attack Stogner diagnosed his condition as indigestion. After a co-employee suggested the likelihood of a heart attack Collier was finally carried on a stretcher to the aid station.

Paragraph 20 of count I states:

"That Defendants, WAGNER and STOGNER, individually and at the direction of JOHN A. WAGNER and JOHN A. WAGNER, JR., by rules and regulations promulgated by WAGNER and JOHN A. WAGNER and JOHN A. WAGNER, JR., and each of them, then isolated Plaintiff, VERN COLLIER, from family, friends and co-workers for a period of approximately three hours, refusing Plaintiff VERN COLLIER'S request for attention by a

certified doctor or hospital, improperly administered and/or interpreted a blood pressure test, observed Plaintiff, VERN COLLIER, crawl to a sink and vomit and instructed Plaintiff, VERN COLLIER, not to seek care by a doctor or hospital, but to return to his work area and seek his own relief."

Count I concludes by alleging that upon Stogner's direction to Collier to return to work, Collier attempted to do so although it required him to walk 100 feet and ascend 13 stairs. Upon arriving at his work station, Collier collapsed and was carried back to the aid station by co-employees. Stogner refused to call an ambulance, doctor or hospital. Collier and his co-employees were intimidated from seeking proper care by signs that had been posted by WCC and the individual Wagners that medical expenses would not be paid by WCC or its representatives unless permission was first obtained from company medical facilities. A co-employee was "then allowed to call plaintiff's wife" who travelled 40 miles to come and get him. She arrived with Donald Collier, the son, and removed plaintiff to a hospital. Stogner gave them no assistance. Upon Vern Collier's arrival at a hospital he suffered three episodes of cardiac arrest.

■ The conduct alleged of Stogner is, at the most, of the type described by Larson as "gross and wanton" but not of the type involving actual intent to injure. The complaint is most vague in charging WCC and the individual Wagners with promulgating rules and regulations that required Collier's isolation. We do not understand the complaint to allege that Collier was falsely imprisoned. In any event, we find no allegation of intentional injury made against those defendants. The posting of notices that the employer would not pay for medical expenses unless approved by company officials was in conformity to the then existing provision of section 8(a) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a)) which stated that an employee selected "his own physician, surgeon and hospital services at his own expense." Neither count I nor count IV which repeats its factual allegations sets forth the type of intentional tort which is an exception to sections 5(a) and 11 of the Act.

Counts II and III repeat in an abbreviated manner some of the allegations of count I but are based mostly upon a claim of a violation of section 8(a) of the Act which at the time in question stated in pertinent part:

"§8. The amount of compensation which shall be paid to the employee for an accidental injury not resulting in death is:

\* \* \*

(a) The employer shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however,

to that which is reasonably required to cure or relieve from the effects of the accidental injury." Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a).

The second and third counts allege that in violation of section 8(a) and with utter disregard for the safety of Vern Collier, defendants failed to (1) provide him with medical care, (2) provide adequate medical attendants, and (3) refer him to competent medical aid. It also alleges that defendants made rules which prevented plaintiff from getting adequate medical care and isolated plaintiff so that he could not seek aid on his own.

■ Section 8 is phrased in terms which list the compensation that is to be paid by the employer. A part of that payment is stated in subsection (a) to be to provide medical services. The employee's remedy to obtain relief under section 8 would appear to be to file a claim under section 19 of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19). No case has come to our attention where any common law action has been recognized as a remedy available under section 8(a). To permit such an action would be contrary to the theory of *Komel.* If the counts be considered as sounding in the tort of outrage, they fail to meet the intentional infliction of injury test required by Larson and approved by our dictum in *Mier.*

In examining the breadth of rights of an employee covered by the Act to sue his employer, we must consider the recent decisions of this court in *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145, and the supreme court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. The decisions in both cases permitted tort actions by the employee against the employer for discharging the employee in retaliation for the employee's filing of a claim under the Act. At the time of *Leach* the Act made such a practice a misdemeanor but provided no civil remedy. The opinion, however, did not limit the reason for recovery to the existence of the criminal sanction. It was based upon the rationale that the cause of action arose from the breach of public policy by the conduct of the employer in conditioning the employee's continued employment upon a sacrifice of the right to make a claim under the Act. The opinion noted that the right the employee was being coerced to waive was a right that had historically been obtained upon enactment of the Act in exchange for the employee's common law right to sue the employer for personal injury.

*Kelsay* reversed a decision of a panel of this court different than the *Leach* panel (51 Ill. App. 3d 1022, 366 N.E.2d 1145). At the time of *Kelsay* no statutory provision prohibited the retaliatory discharge. However, the supreme court reasoned that public policy required a remedy to prevent employers from requiring their employees to choose between their jobs and their rights under the Act. For that reason and because the injury for

which suit was brought was not one related to the employee's work, section 11 was held to not bar the action.

Under the theory of *Komel*, the injury asserted in the case on appeal was work related and in the line of duty. Regardless of how gross the conduct described may be, the employee was not alleged to be required to choose between his job and his rights under the Act. We do not consider *Leach* or *Kelsay* to be precedent for the attempted assertion of a cause of action here.

■■■ Count IV is brought by Lois and Donald Collier, Vern's wife and son. They seek damages for loss of Vern's companionship and society and for the infliction of extreme emotional distress. A son has no cause of action for the loss of the companionship and society of his father. A similar loss suffered by a spouse is known as a loss of consortium and is generally the basis of a cause of action in the deprived spouse. In *Bloemer v. Square D Co.* (1972), 8 Ill. App. 3d 371, 290 N.E.2d 699, section 5(a) of the Act was ruled to be a bar to recovery by a wife when as here the injury to the husband giving rise to the loss of consortium was compensable under the Act. The *Bloemer* court followed the principle of *Duley v. Caterpillar Tractor Co.* (1969), 44 Ill. 2d 15, 253 N.E.2d 373, and *Moushon v. National Garages, Inc.* (1956), 9 Ill. 2d 407, 137 N.E.2d 842, that the compensation payable under the Act was intended to cover the full extent of the employer's liability resulting from work related injuries to employees. In *Duley*, a woman died as the result of an injury incurred in the course of and arising out of her employment. Her husband as her administrator brought an action for wrongful death against the employer. Because the husband was not totally dependent, he received no compensation under the Act. The supreme court cited sections 5(a) and 11 as partial grounds for upholding the dismissal of the complaint.

■ We need not decide whether the combined effect of sections 5(a) and 11 would bar plaintiffs Lois and Donald Collier's claim for extreme emotional disturbance. Restatement (Second) of Torts §46(2) (1965) holds an actor whose outrageous conduct is directed to third persons liable,

> "a. to a member of such person's immediate family who is present at the time * * * ."

Here, the only conduct of any defendant or agent of defendant witnessed by these plaintiffs was the alleged act of Stogner in giving them no help in taking Vern Collier to their automobile. That, of itself, would not meet the standards to make the conduct witnessed by these plaintiffs outrageous. We conclude that the trial court properly dismissed count IV as well.

Because of the disposition we have made, we need not consider the

effect, if any, of the copy of the purported settlement contract and supporting documents filed in support of the motion to dismiss.

For the reasons stated, we affirm.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I disagree with the majority opinion, but before detailing my disagreement, it is necessary to set forth the facts as alleged in the pleading, which the majority has not done with sufficient specificity.

From the first amended complaint, we learn that on March 17, 1975, Wagner was a corporation in the business of making various castings at its plant in Decatur; that William Stogner (Stogner) was employed by Wagner as a licensed practical nurse; and that Vern Collier (Collier) was employed by Wagner. According to the complaint, Collier was stricken at approximately 4:30 p.m., on March 17, 1975, with an illness while engaged in his duties at Wagner's plant. Stogner was notified by phone of Collier's condition and was advised that Collier was lying on the floor and complaining of chest pains. Stogner directed that Collier be brought to the aid station. However, when it became apparent that this was impossible, Stogner went to the location where Collier was stricken. The complaint alleges that Stogner rendered no immediate medical assistance, but waited for a period of approximately 15 minutes and then advised Collier that he was suffering from indigestion. Another employee suggested that Collier might be having a heart attack. Collier was then placed on a stretcher and carried to the first aid station. For a period of approximately three hours thereafter, Collier remained in the aid station. Stogner refused Collier's requests for further medical attention. During this period of time Collier crawled to a sink and vomited. Stogner subsequently directed Collier to return to work, and, upon doing so, Collier collapsed and had to be carried back to the aid station. Collier's wife was finally summoned by a co-employee, and Collier was taken to a hospital where he suffered three episodes of cardiac arrest.

In ruling on the defendants' motion to dismiss, the court was bound to accept the plaintiffs' allegations as set forth in the complaint as true. As noted above, those allegations reveal that Stogner failed to administer aid to Collier after he had apparently suffered heart problems and exhibited symptoms typical of a heart attack. In addition, Stogner continuously refused Collier's request for attention by a doctor or hospital, and the refusal continued for a period of over three hours, even though Stogner had observed Collier crawl to a sink and vomit.

In interpreting the tort of outrage, the majority sets forth the criteria in the Restatement (Second) Torts §46 (1965), for testing such a complaint and then incorrectly applies that criteria. As noted in the opinion, comment (i) to section 46 defines intention and recklessness and makes the rule of section 46 applicable "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct."

In comparing the outrageous conduct in this case with the criteria set forth in section 46 and the definition in comment (i), it is obvious that a more clear case of actual intent to inflict emotional distress would indeed be difficult to imagine. Clearly, the plaintiffs' complaint, when tested with the criteria of section 46, reveals that a sufficient intent was present in order to make the defendants' conduct an actionable wrong. In fact, counts I and IV of the complaint specifically alleged that the defendants knew, or should have known, that their conduct was extreme and outrageous, and that their conduct could, with a high degree of probability, cause severe emotional stress. Thus, the majority's reliance on *Larson* and the dicta in *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1, that section 5(a) of the Workmen's Compensation Act bars this suit unless actual intent is alleged, is misplaced. Actual intent is alleged in the complaint, and the conduct is so wanton as to be equated with intent.

The conduct alleged to have caused the plaintiffs' emotional distress was primarily that of defendant Stogner. However, Stogner individually had no duty, other than that perhaps dictated by professional ethics, to aid or treat the plaintiff. Consequently, Stogner was improperly joined as a defendant in this cause. However, Stogner, as an employee and agent of defendant Wagner, did breach Wagner's duty to provide medical services to the plaintiff as required by section 8(a) of the Act. The majority's conclusion that the plaintiff could have filed a claim under section 19 of the Act for medical services and relief under section 8(a) is obviously absurd in view of the urgency of treatment required for a heart attack victim.

Finally, the result reached by the majority offends the public policy of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138 *et seq.*), as expressed in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145. Those cases dictate that there be a remedy when the conduct of an employer is outrageous and contrary to public policy. This case clearly demonstrates that the conduct was contrary to public policy since the necessary first aid and medical services were withheld from the plaintiff for a period of approximately three hours after he exhibited symptoms of a heart attack. Conduct such as this is contrary to the

standards of a civilized society and constitutes an actionable wrong which should have been submitted to the trier of fact for resolution.

In summary, I find that neither section 5(a) nor section 11 of the Act bars this action. Accordingly, I would reverse and remand this cause with directions that the complaint be reinstated.