DANIEL S. CARRICO *et al.*, Plaintiffs-Appellants, v. EVERETT M. DELP *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0519

Opinion filed March 10, 1986.

Law Offices of Gustine & Theivagt, Ltd., of Carrollton (Charles E. Theivagt, of counsel), for appellants.

Gordon R. Broom, of Burroughs, Simpson, Hepler, Broom & McCarthy, of Edwardsville, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiffs, Daniel and Donna Mae Carrico, filed suit against the defendant, Jersey State Bank (bank) and its president, Everett

Delp. The plaintiffs' amended complaint contained six counts. Count I alleged breach of a line-of-credit agreement, and count II alleged malicious breach of the agreement and requested punitive damages. Counts III through VI were based on fraud. The trial court allowed defendants' motion to dismiss as to counts I and II, with leave to file amended counts, and denied the motion as to counts III through VI. The plaintiffs appeal from the trial court's order granting the bank's motion to dismiss counts I and II of the amended complaint, the trial court having entered the requisite Rule 304(a) finding (87 Ill. 2d R. 304(a)). At issue is whether the plaintiff sufficiently pleaded an enforceable contract and breach thereof, and whether they may seek to recover punitive damages.

On October 31, 1978, the plaintiff and the bank entered into a security agreement to provide the plaintiffs with a line of credit not to exceed $80,000. The bank obtained a lien on all of the plaintiffs' machinery, equipment, livestock and offspring. Between October 31, 1978, and May 1981, the line of credit was gradually increased to $185,000. In May 1981, the plaintiffs requested their line of credit be increased by $25,000. The bank referred them to the Farmers Home Administration (FHA). The FHA agreed to lend the $25,000 provided the bank would subordinate its rights to a portion of the plaintiffs' livestock. The bank refused. The plaintiffs made a second attempt to secure FHA financing, but the FHA again conditioned the loan on the livestock lien, which the bank refused.

In August 1981, the bank agreed to increase the line of credit by $25,000 in exchange for additional security, including a second mortgage on the plaintiffs' real estate and an assignment of the cash surrender value of the plaintiffs' life insurance policies. The parties executed a line-of-credit agreement on August 12, 1981, which stated in part:

"1. This Agreement is entered into to induce the Bank to provide farm operating funds for Borrowers use from time to time.

2. The Bank agrees to loan Borrowers (at bank discretion) an amount up to an aggregate of Two Hundred, Ten Thousand Dollars ($210,000.00) in such amounts as needed from time to time by Borrowers.

3. The Borrowers agree that at such time as Borrowers use any part or all of the Two Hundred Ten Thousand Dollars ($210,000.00) Borrowers shall execute and deliver to Bank a Note before funds are distributed bearing maturity dates not to exceed six months with interest payable at maturity at an in-

terest rate established by the Bank."

The agreement also stated the collateral, including the mortgages on the plaintiffs' real estate and cash surrender value of their insurance policies, secured all existing and future loans from the bank.

On August 12, 1981, the plaintiffs had 16 outstanding promissory notes for the total sum of $185,000. The notes were dated between February 23, 1981, and June 19, 1981. Each matured six months after execution, with interest rates varying from 16% to 19%. Each of the notes refers to the collateral listed on the October 31, 1978, security agreement. The last three notes also refer to the August 12, 1981, line-of-credit agreement and its collateral. These notes were all timely paid. After the line-of-credit agreement was executed, the plaintiffs executed seven more promissory notes, dated between August 17 and November 18, 1981. Each matured in six months, with interest rates varying between 17% and 19.5%.

On November 24, 1981, the plaintiffs had reduced their obligations to the bank to $179,000. On that date, the bank notified the plaintiffs that it was unilaterally terminating the line-of-credit agreement. After that, the bank refused to loan additional money. The plaintiffs alleged that they were forced to sell their machinery, equipment and livestock to pay their outstanding debts, including debts to third parties incurred in reliance on the line-of-credit agreement.

■ The bank maintains the line-of-credit agreement was not an enforceable contract for two reasons. First, the bank argues the contract lacked mutuality because it did not require the plaintiffs to borrow funds from the bank. Mutuality of obligation means that either both parties to the agreement are bound or neither is bound. (*Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153.) The validity of a contract does not always depend upon mutuality of obligation. If it did, then no option contract could ever be valid. Only when no other consideration has been transferred must the mutual promises of the parties be binding. *Garber v. Harris Trust & Savings Bank* (1982), 104 Ill. App. 3d 675, 432 N.E.2d 1309.

■ Mutuality becomes a nonissue when consideration has otherwise been conferred upon one of the parties.

> "The classic and time-honored definition of consideration is 'anything which is of benefit to one of the parties to a contract or a detriment or disadvantage to the other.' (12 Ill. L. & Prac. *Contracts* sec. 71 (1983).)" (*Worner Agency, Inc. v. Doyle* (1985), 133 Ill. App. 3d 850, 856, 479 N.E.2d 468, 473.)

Once the plaintiffs gave the bank mortgages and liens on their property and assigned the cash surrender value of their life insurance poli-

cies, they could not use those assets to secure other financing. The additional assets pledged secured both future loans and existing ones. The bank, therefore, obtained a benefit while the plaintiff incurred a detriment.

The bank also contends the agreement lacked sufficient definiteness to be enforceable. In *McErlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 414 N.E.2d 128, the court held an agreement to loan money in the future was enforceable only if it contemplated the terms upon which the future loans would be made. The court discussed the material terms of a line-of-credit agreement:

> "These terms would include, for example, the intended duration of the line of credit; the applicable rate of interest to be charged for any loan emanating from such an agreement, or the basis for how such interest would be ascertained; what duration or date or dates were contemplated for maturity of such loans; and what mode or rate of repayment was contemplated, *i.e.*, whether the entire amount would be repayable or if repayment in installments would be acceptable." (90 Ill. App. 3d 1141, 1146, 414 N.E.2d 128, 132.)

The bank notes the only one of these terms which the agreement addressed is the outer limit of six months for duration of the notes.

◼ In addition to the line-of-credit agreement, the notes executed by the plaintiffs both prior to and after execution of the agreement provide the essential terms. A previous course of dealing may give meaning to or qualify an agreement. (Restatement (Second) of Contracts sec. 223, at 157-60 (1981).) Part performance of an agreement may also remove uncertainty and establish an enforceable contract. (*Yoder v. Rock Island Bank* (1977), 47 Ill. App. 3d 486, 362 N.E.2d 68.) When the terms of an agreement are doubtful and uncertain, and the parties have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts. (*Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 195 N.E.2d 137.) Each note matured in six months, and all were paid in one installment. The fact that the bank set the interest rate did not make the agreement unenforceable. The terms of a contract may be reasonably certain even though it empowers one party to make a selection of terms in the course of performance. Restatement (Second) of Contracts sec. 34(1), at 97-100 (1981).

The only term left open was the duration of the line-of-credit agreement itself. The bank maintains the agreement was, therefore, terminable at will. Generally, if no definite time is fixed during which an executory contract shall continue in force, it is terminable at the

will of either party. (*Gage v. Wilmette* (1924), 315 Ill. 328, 146 N.E. 325.) The agreement, however, was not fully executory. The plaintiffs had pledged collateral to secure existing obligations as well as future ones.

■ Whether a contract fixing no period of duration is terminable at will depends upon the intent of the parties. Although a contract containing no provision for its duration is ordinarily terminable at will, such is not the case when a period of duration can fairly be implied from the nature of the contract. The duration of an agreement must be determined from a consideration of the agreement as a whole. (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 405 N.E.2d 351.) Construing the contract to be terminable at will would mean that the plaintiffs obtained no benefit from pledging the additional security. When consideration for a promise requiring continuing performance has been partly executed, a court will be reluctant to hold that the promise is determinable at the promisor's pleasure. (1 Williston, Contracts sec. 38, at 117 (3d ed. Jaeger 1957).) Furthermore, the bank drafted the agreement. An instrument will be most strongly construed against the party who prepared it. *Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 874.

The plaintiffs argue the parties must have contemplated a duration of at least six months to correspond to the maturity dates of the existing notes. They assert such a period of duration would also correspond to the maturity cycles of their livestock. When the continuation of a contract is without definite duration, the law will imply a reasonable time. (*Adkisson v. Ozment* (1977), 55 Ill. App. 3d 108, 370 N.E.2d 594.) Whether three months and 12 days was a reasonable time for duration of the line-of-credit agreement under the circumstances of this case is a question for the trier of fact.

■ The bank asserts the phrase "at bank discretion" used in the second paragraph of the agreement gave the bank absolute discretion in deciding whether to make future loans under the agreement. The bank, therefore, concludes it could not breach the agreement by refusing to make further loans. As the plaintiffs note, the entire purpose of the agreement was to provide future credit for their farming operations. If the bank had complete discretion, then the plaintiffs could not be assured of receiving future credit. The primary objective in construing a contract is to give effect to the parties' intent, greater regard being given to such intent when clearly revealed than to any particular words used. The intent should not be gathered from any clause or provision standing by itself, but each provision should be

viewed in light of the others. *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.

■■ Under the construction urged by the bank, it drafted the agreement and got the plaintiffs to pledge their security but promised nothing in return. Every contract implies good faith and fair dealing between the parties. If an instrument is susceptible of two conflicting constructions, one of which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690.) Good faith between contracting parties requires the party vested with contractual discretion to exercise it reasonably, and he may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958; *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 421 N.E.2d 1375.) We conclude the agreement gave the bank reasonable, not absolute, discretion.

■■ The bank maintains it exercised its discretion reasonably. The bank insists it terminated the agreement because it felt insecure. This issue is not before us. A motion for judgment on the pleading admits the truth of facts well-pleaded by the opposite party. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 359 N.E.2d 113.) The plaintiffs alleged that the bank was secure and that it terminated the agreement without just cause.

■■ In the second count of their complaint, the plaintiffs alleged malicious breach of contract and sought punitive damages. Traditionally, actions for breach of contract have not given rise to claims for punitive damages. The general rule has no application when the cause of action is premised on a separate and independent tort. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Relying on *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 468 N.E.2d 414, the plaintiffs argue they have pleaded the independent tort of wilful and wanton misconduct. In *Morrow*, the court stated wilful and wanton misconduct is essentially the separate tort of aggravated negligence, which is "evidenced by a conscious and deliberate disregard for the rights or safety of others ***." 126 Ill. App. 3d 1089, 1095, 468 N.E.2d 414, 420.

■■ The plaintiffs do not allege the bank's actions amounted to a reckless disregard of their safety or the safety of their property. They only assert the bank wilfully and wantonly disregarded their rights under the agreement. While the law does not condone breach of contract, it does not consider it wrongful or tortious. If a party desires to

breach a contract, he may do so purposely so long as he is willing to place the other party in the position he would have been absent the breach. (*Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill App. 3d 338, 408 N.E.2d 1041.) At most, the plaintiffs have alleged the bank acted in bad faith in breaching the contract. To sanction punitive damages on a bad faith theory would allow punitive damages whenever the breach was intentional. Thus, the exception would swallow up the general rule denying punitive damages for breach of contract. (*W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.* (3d Cir. 1984), 746 F.2d 215.) The trial court properly dismissed count II of the plaintiffs' amended complaint.

For these reasons, the order dismissing count II of the plaintiffs' amended complaint is affirmed, but the order dismissing count I is reversed and the cause is remanded for further proceedings.

*Affirmed in part, reversed in part and remanded.*

GREEN and SPITZ, JJ., concur.