BUEHLER LTD., an Illinois
corporation, Plaintiff,

v.

HOME LIFE INSURANCE
COMPANY, Defendant.

No. 88 C 2634.

United States District Court,
N.D. Illinois, E.D.

Sept. 21, 1989.

Thomas J. Frederick, James D. Harrington, and George C. Lombardi, Winston & Strawn, Chicago, Ill., for plaintiff.

Joseph J. Hasman, Ernest W. Irons, and Anna S. Richo, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### I. INTRODUCTION

The plaintiff, Buehler Ltd., brought this action directly and by right of subrogation against Home Life Insurance Co. for its refusal to pay life insurance benefits to the beneficiary of Buehler's late employee, Howard Tokmakian. In its six-count complaint, the plaintiff brings claims for breach of contract (Counts I and II); vexatious and unreasonable delay in settling the claim (for which the plaintiff requests attorneys' fees and statutory penalties pursu-ant to section 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, para. 767 (1985)) (Counts III and IV); and breach of Home Life's implied duty of good faith and fair dealing (Counts V and VI). The defendant has answered Count I and has moved to dismiss the subrogation counts (Counts II, IV, and VI) as being preempted by section 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a) (1982). The defendant also contends that the remaining direct action counts (Counts III and V) fail to state a claim and likewise should be dismissed. For the following reasons, the court grants the defendant's motions.

### II. FACTS

For purposes of a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must draw all reasonable inferences in the light most favorable to the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed for failure to state a cause of action unless it is beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court, however, need not accept as true legal conclusions or opinions that are couched as factual allegations. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Accordingly, the facts of this case, as alleged in the plaintiff's second amended complaint, are as follows.

For several years prior to 1985, Buehler had a group life insurance policy issued by Home Life for the benefit of Buehler employees. Under this policy, the amount of death benefits paid to an employee's beneficiary was determined by the class to which the employee was placed pursuant to the policy. At the encouragement of Home Life, Buehler requested that the terms of its life insurance policy be changed so that death benefits would be determined by a multiple of 1.5 times the employee's annual income, rather than on a class basis. In a

memorandum dated November 2, 1985, Buehler notified its employees of this change to their life insurance coverage. The amended policy became effective on November 28, 1985, and as a result Buehler began paying higher premiums to Home Life.

On January 29, 1987, Howard Tokmakian, a sales engineer for Buehler, died. Subsequently, on June 18, 1987, Harold Tokmakian, Howard's brother and designated beneficiary under the policy, filed a claim for $78,732 under the life insurance agreement. Home Life refused to pay the claim.[1]

On April 19, 1988, Buehler paid Harold Tokmakian $78,732 to satisfy his claim, allegedly in recognition of Buehler's legal obligation under its November 2, 1985, memorandum announcing the amended life insurance coverage. Buehler then instituted this diversity action against Home Life. Buehler's second amended complaint contains six counts. Count I is a direct action against Home Life for breach of its promise to Buehler to provide life insurance coverage for Buehler's employees at 1.5 times their annual income. The defendant has answered this count.

In Count II the plaintiff, by right of subrogation,[2] alleges that Home Life breached its contract to provide benefits to the beneficiary of Howard Tokmakian. Count III alleges that Home Life delayed its payment of benefits to Harold Tokmakian without reason or probable cause and in violation of its agreement with Buehler and, therefore, is liable under section 155 of the Illinois Insurance Code for attorneys' fees and statutory penalties. Count IV alleges a section 155 claim by right of subrogation for Home Life's unreasonable delay in payment, in violation of its legal obligation to Harold Tokmakian. Finally, Counts V and VI are claims for breach of Home Life's implied duty of good faith and

fair dealing. In Count V Buehler alleges that Home Life acted in bad faith by refusing to pay the $78,732 claim filed by Harold Tokmakian and that by doing so Home Life breached its duty to deal fairly and in good faith with Buehler. The plaintiff also alleges that Home Life's breach of this duty was committed with fraud, actual malice, willfullness, or with such gross negligence as to indicate a wanton disregard of Buehler's legal rights. Count VI alleges the same action by right of subrogation for Home Life's breach of duty to Harold Tokmakian.

The defendant has moved to dismiss Counts II, IV, and VI, the subrogation counts, on the grounds that they are preempted by ERISA. In response, Buehler asserts that Home Life is not a fiduciary and that ERISA does not preempt state-law claims against nonfiduciaries.[3] In the alternative, the plaintiff argues that even if Home Life is a fiduciary, Count IV, which alleges vexatious and unreasonable delay, should not be preempted because ERISA specifically permits actions based on state statutes that regulate insurance.

The defendant also has moved to dismiss Count III for failure to state a section 155 claim. The defendant argues that only insureds may bring such a claim and, therefore, that employers who merely establish a group life insurance program for their employees have no standing. The plaintiff, in turn, argues that the language of section 155 does not limit the persons who may bring suit and suggests that a section 155 claim may be brought by anyone to whom the insurer owes a duty; and Home Life, Buehler contends, owes it a duty pursuant to its agreement to provide group life and health insurance to Buehler's employees.

Finally, the defendant has moved to dismiss Count V, asserting that Buehler has failed to plead all the elements of an action for breach of the implied duty of good faith

---

1. The complaint does not allege why Home Life refused to pay this claim.

2. Buehler claims that by virtue of its having paid Harold Tokmakian the life insurance benefits, it has become subrogated to his rights under the group life insurance policy.

3. The plaintiff proffers no other arguments against ERISA preemption of all three counts except for its conclusory assertion that Home Life is not a fiduciary.

with the particularity required by Federal Rule of Civil Procedure 9(b). The plaintiff, on the other hand, contends that under Rule 8(a) all that is required is fair notice of the cause of action.

## III. THE SUBROGATION COUNTS: ERISA PREEMPTION

### A. General Principles

Section 514(a) of ERISA outlines the preemptive effect of ERISA on state laws and provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a)—even if the state law is consistent with ERISA's substantive requirements. *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985). The broad application of this preemption clause is narrowly limited by section 514(b), the so-called "saving clause," which provides that ERISA will not preempt any state law that "regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The subsequent "deemer clause," however, qualifies the saving clause and states that an employee benefit plan "shall [not] be deemed to be an insurance company ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts...." *Id.* § 1144(b)(2)(B).

The first step in ERISA preemption analysis is the determination whether a state law falls within the scope of the express preemption clause. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). This step has two requirements: 1) There must be an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1),[4] and 2) the state law must "relate to" the employee benefit plan.

With respect to the plan requirement, there must be "(1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, ... (5) to participants or their beneficiaries." *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *see Brundage–Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 510–11 (7th Cir.1989) (discussion of welfare benefit plans); *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 491–93 (9th Cir.1988) (same), *cert. denied*, —— U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *cf.* 29 C.F.R. § 2510.3–1(j) (1988) (Department of Labor regulation excluding certain group insurance programs from ERISA definition of "employee welfare benefit plan").

As for the second requirement, the phrase "relate[s] to" should be given a broad, commonsense meaning; thus, a state law will relate to an employee benefit plan " 'if it has a connection with or reference to such a plan.' " *Metropolitan Life*, 471 U.S. at 739, 105 S.Ct. at 2388 (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The preemption clause is not limited to "state laws specifically designed to affect employee benefit plans," *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900, and can encompass both state common law and statutory causes of action. *See, e.g., Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir.1985) ("[P]reemption of state law claims by ERISA depends on the conduct to which such law is applied, not on the form or label of the law.").

If the state law relates to an ERISA plan, then the next step is to determine whether the law is excepted from preemption by the saving clause—the relevant exception in this case being state laws that regulate insurance. The Supreme Court has been guided by two considerations in determining whether a state law "regulates insurance." The first factor looks to

---

**4.** ERISA governs pension and welfare benefit plans. Welfare benefit plans (the type of plan relevant to this case) provide health, legal, vaca-tion, or training benefits. Pension plans, on the other hand, provide retirement income. 29 U.S.C. § 1002(2).

a commonsense interpretation of the language of the saving clause, particularly the word "regulate"; for the state law to regulate insurance, it "must not just have an impact on the insurance industry, but be specifically directed toward that industry." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554.

■ Nevertheless, the fact that a state law seems to regulate insurance under this commonsense test does not mean that it is saved from ERISA preemption, for a court also determine whether the state law regulates the "business of insurance," as that phrase is defined by case law interpreting the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (1982).[5] *See, e.g., Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1553. The McCarran–Ferguson test has three inquiries:

> *[F]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) (emphasis in original).

■ The third inquiry of the McCarran–Ferguson test overlaps to a great extent with the commonsense approach to the saving clause, since both look to whether the state law is directed to entities in the insurance industry. Under the McCarran–Ferguson test, however, a court also must determine whether the state law transfers or spreads a policyholder's risk and whether the state law is integral to the insured/insurer relationship. To "regulate insurance," then, the state law must govern the substantive content of the insurance contract, *see, e.g., Metropolitan Life*,

471 U.S. at 740–44, 105 S.Ct. at 2389–91, and not merely the procedural aspects of claims processing. *See, e.g., Dutenhaver v. Teachers Ins. & Annuity Ass'n of Am.*, No. 85 C 1740, slip op. at 3, 1987 WL 26138 (N.D.Ill. Dec. 1, 1987) (Holderman, J.).

■ Finally, even if the state law is determined to regulate the "business of insurance" (and, therefore, falls within the literal scope of the saving clause), it still may be preempted if ERISA's civil enforcement provisions provide the exclusive remedy for the conduct alleged.[6] The saving clause cannot be read in isolation; rather, a court's "understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA"—section 1132(a). *Pilot Life*, 481 U.S. at 52, 107 S.Ct. at 1555. For example, section 1132(a) delineates a number of remedies available to a participant or beneficiary asserting improper processing of a claim for benefits under an ERISA–regulated plan. The participant may sue to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and relief may take the form of "accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life*, 481 U.S. at 53, 107 S.Ct. at 1556. A participant also may bring an action for breach of fiduciary duty, 29 U.S.C. § 1132(a)(2) (incorporating section 1109), and seek removal of the fiduciary. Under these civil enforcement provisions a court in its discretion may award the participant his attorneys' fees, *id.* § 1132(g), but the participant may not recover extracontractual compensatory or punitive damages for improper processing of his benefits claim.[7]

---

5. The McCarran–Ferguson Act provides, in relevant part: "The business of insurance, and every person engaged therein, shall be subject to the laws of the several states which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).

6. The "deemer clause" is irrelevant in this case, since Buehler's plan was not self-insured and,

therefore, would not be deemed an "insurance company" under state law. Accordingly, the court will not address the deemer clause in its preemption analysis.

7. In *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985), the Court held that ERISA's right of action for violations of fiduciary duties

**1560**

■ Congress intended that these civil enforcement provisions be the exclusive remedy for beneficiaries and participants seeking to recover benefits under an ERISA–regulated plan. *Pilot Life*, 481 U.S. at 52–56, 107 S.Ct. at 1555–1557. In fact, ERISA's preemptive force is as sweeping as that of section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1982), and will displace all state-law remedies applicable to conduct prescribed by ERISA—whether the state law conflicts with, is consistent with, or even is identical to ERISA's remedial provisions:

> [T]he detailed provisions of [section 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal

scheme would be completely undermined if ERISA–plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in [section 1132(a)] ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985)) (emphasis in *Russell*);[8] *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1545–1546, 95 L.Ed.2d 55 (1987) (suit by beneficiary to recover benefits from covered plan is governed exclusively by section 1132(a)(1)(B)).

### B. Application to This Case

■ In this case, Buehler's subrogation claims for breach of contract, vexatious

(section 1132(a)(2)), did not authorize a beneficiary's recovery of extracontractual punitive or compensatory damages. Rather, recovery for such violations inures to the benefit of the plan as a whole. *Id.* at 140, 105 S.Ct. at 3089. Although the Court specifically limited its holding to a section 1132(a)(2)/1109 cause of action, *see, e.g., id.* at 139 n. 5, 105 S.Ct. at 3088 n. 5; *cf. id.* at 144 n. 12, 105 S.Ct. at 3091 n. 12 (declining to reach question whether § 1109 authorizes recovery of extracontractual damages from a fiduciary by *plan*), the Court's method of analysis "could be [and, indeed, has been] construed as sweeping more broadly than [this] narrow ground of resolution," *id.* at 150, 105 S.Ct. at 3094 (Brennan, J., concurring in the judgment). The Court found that "[t]he six carefully integrated civil enforcement provisions found in § [1132(a)] ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly," *id.* at 146, 105 S.Ct. at 3092 (emphasis in original); furthermore, "there is a stark absence—in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extracontractual damages," *id.* at 148, 105 S.Ct. at 3093. Moreover, the Court specifically singled out section 1132(a)(1)(B) in noting that it "says nothing about the recovery of extracontractual damages." *Id.* at 144, 105 S.Ct. at 3091; *see also Kimmel v. Texas Commerce Bank*, No. 86 C 2861, slip op. at 2 n. 2, 1986 WL 9180 (N.D.Ill. Aug. 18, 1986) (this court holding that ERISA does not authorize award of punitive damages

for individual claiming improper processing of his benefit claim under § 1132(a)(1)(B)), *aff'd on other grounds*, 817 F.2d 39 (7th Cir.1987).

Other courts have picked up on the dictum in *Russell* to strike punitive damages claims brought under other sections of ERISA. *See, e.g., Forys v. United Food & Commercial Worker's Int'l Union, AFL–CIO, & CIO*, 829 F.2d 603, 604 n. 2 (7th Cir.1987) (plaintiffs "most likely would be unable to recover punitive damages or extra-contractual damages for emotional distress under ERISA"); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 627 (7th Cir.1987) (punitive damages not recoverable under § 1132(a)(3)); *Unitis v. JFC Acquisition Co.*, 643 F.Supp. 454, 462 (N.D.Ill.1986) (same); *Vaughn v. Wessel Co.*, No. 86 C 5452, slip op. at 1, 1986 WL 13216 (N.D.Ill. Nov. 17, 1986) (punitive damages not recoverable under ERISA); *Boesl v. Suburban Trust & Sav. Bank*, 642 F.Supp. 1503, 1516 (N.D.Ill.1986) (punitive damages probably never recoverable by ERISA participant or beneficiary); *Wilson v. Pye*, No. 85 C 6341, slip op. at 5, 1986 WL 1027 (N.D.Ill. Jan. 3, 1986) (after extensive review of pre- and post-*Russell* case law, court concludes that punitive damages probably never recoverable by ERISA beneficiary or participant).

**8.** In fact, the Court in *Pilot Life* stated that the "most important[ ]" reason that the plaintiff's state-law cause of action was preempted was "the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive...." 481 U.S. at 57, 107 S.Ct. at 1558.

and unreasonable delay, and breach of the implied duty of good faith and fair dealing clearly "relate to" an employee benefit plan. First of all, the plaintiff alleges that it established the life insurance program for the purpose of providing life insurance benefits to the beneficiaries of its employees and, moreover, that it paid the premiums. Indeed, the plaintiff does not dispute that its group life insurance program is an ERISA plan. Second, Buehler's state-law subrogation claims are predicated upon Home Life's denial of life insurance benefits to Harold Tokmakian under the welfare benefit plan. Accordingly, these claims "relate to" an employee benefit plan and therefore are preempted by ERISA unless excepted by the saving clause.

■ Buehler's common law claims for breach of contract and breach of the implied duty of good faith are not "saved" by the saving clause, since the state laws relate to all contracts and are not specifically directed toward insurance contracts or the insurance industry. *See, e.g., Pilot Life*, 481 U.S. at 41, 57, 107 S.Ct. at 1549, 1558 (ERISA preempts state common law tort and contract actions asserting improper processing of claims for benefits under insured employee benefit plan). Thus, since these claims are rooted in general principles of contract and tort law, they do not accord even with the commonsense understanding of "insurance regulation" and, therefore, are preempted by ERISA.[9]

■ Buehler's section 155 claim, however, presents a closer question, since section 155 is directed specifically toward the insurance industry and does seem, at first glance, to regulate insurance. *See Dutenhaver*, slip op. at 3. Similarly, section 155 satisfies the third inquiry of the McCarran–Ferguson test, since its scope is limited to entities within the insurance industry. Nevertheless, section 155 does not satisfy the remaining McCarran–Ferguson factors,

since it does not regulate the substantive content of insurance contracts.

Section 155 provides a variety of remedies, such as attorneys' fees and statutory penalties, when insurance companies unreasonably fail to settle a claim:

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

Section 155 does not transfer or spread the policyholder's risk—a proposition conceded by the plaintiff. *See* Memorandum in Opposition to Defendant's Motion to Dismiss Counts II Through VI of Plaintiff's Second Amended Complaint at 6 n.*. Nor is it an integral part of the insured/insurer relationship, since it does not govern the substantive content of the insurance contract, but merely regulates the procedural aspects of claims processing by providing certain remedies in the event of vexatious insurance practices. *See Dutenhaver*, slip op. at 3.[10] Thus, since section 155 does not survive the McCarran–Ferguson test, it is not saved from preemption under ERISA. *See also Kanne*, 867 F.2d at 493 (similar provision in California Insurance Code preempted by ERISA); *Roberson v. Eq-*

---

**9.** There is no need to apply the McCarran–Ferguson test if a state law cannot pass the commonsense test of ERISA preemption.

**10.** The plaintiff's only attempt to distinguish *Dutenhaver* is its assertion that Home Life is not amenable to suit under ERISA because it is not a fiduciary. This contention is addressed, and rejected, in part III.C.

*uitable Life Assurance Soc'y of United States*, 661 F.Supp. 416, 422–23 (C.D.Cal. 1987) (same), *aff'd in an unpublished opinion*, 869 F.2d 1498 (9th Cir.1989).

In any event, even if section 155 "regulates insurance" within the meaning of the saving clause, it still is preempted since, as discussed above, Buehler's exclusive cause of action to recover benefits under the ERISA-governed plan is provided by section 1132(a) of ERISA. This is so even though section 155's provision for recovery of attorneys' fees is consistent with that of ERISA, 29 U.S.C. § 1132(g). Moreover, section 155 allows a plaintiff to recover a substantial statutory penalty much akin to punitive damages and completely at odds with ERISA's implicit prohibition on punitive damages recoveries.[11] *See also Anschultz v. Connecticut Gen. Life Ins. Co.*, 850 F.2d 1467, 1469 (11th Cir.1988) (similar provision under Florida Insurance Code preempted); *Roberson*, 661 F.Supp. at 423–24 (similar provision under California Insurance Code preempted for infringing on exclusive remedy provisions of ERISA). Accordingly, Buehler's section 155 claim is also preempted by ERISA since Buehler, as subrogee to Tokmakian's rights as an ERISA beneficiary, has an exclusive remedy under ERISA's civil enforcement provisions.

### C. The Plaintiff's Response: "Fiduciary" Under ERISA

Buehler's general argument against ERISA preemption is that ERISA would provide it with no remedy against Home Life because Home Life is not a "fiduciary" under the Act. ERISA, Buehler contends, therefore cannot preempt state law against nonfiduciaries.

Buehler's argument is without merit and, indeed, is belied by the very existence of its lawsuit. Under ERISA a person is a "fiduciary"

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or

exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).[12] *See generally Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 291–95 (7th Cir.1989) (investment broker to plan not fiduciary under circumstances of case).

■ Courts consistently have defined "fiduciary" broadly, in accord with congressional intent to safeguard the interests of participants and their beneficiaries. *See, e.g., Mutual Life Ins. Co. v. Yampol*, 840 F.2d 421, 425 (7th Cir.1988); *Ed Miniat*, 805 F.2d at 735–38; *Leigh v. Engle*, 727 F.2d 113, 133–34 (7th Cir.1984); *Chicago Board Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254, 258–60 (7th Cir.1983). Thus, a person is a fiduciary to the extent that he exercises "'*any* power of control, management or disposition with respect to monies or other property of an employee benefit fund, or has the authority or responsibility to do so.'" *Forys v. United Food & Commercial Worker's Int'l Union, AFL–CIO, & CLC*, 829 F.2d 603, 607 (7th Cir.1987) (*quoting* H.R. Rep. No. 533, 93d Cong., 2d Sess. 11, *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4649) (emphasis added); *see, e.g., Benvenuto v. Connecticut Gen. Life Ins. Co.*, 643 F.Supp. 87, 90–91 (D.N.J. 1986). The fact that a person does not have complete discretion to dispose of plan assets is not dispositive. *See, e.g., Yampol*, 840 F.2d at 425.

■ The essence of Buehler's complaint—that Home Life wrongfully denied payment of life insurance benefits under an

---

**11.** Although ERISA does at times provide for statutory penalties, *see, e.g.,* 29 U.S.C. § 1132(a)(1)(A) (the cause of action for § 1132(c), dealing with an administrator's refus-

al to supply information to a beneficiary), none of these provisions is relevant to this case.

**12.** A "person" may be a corporation. *See* 29 U.S.C. § 1002(9).

ERISA-regulated plan—indicates that Home Life is a "fiduciary" within the meaning of ERISA, since it exercised at least some (indeed, most likely complete) authority to grant or deny benefits. In fact, Home Life admits as much, *see* Defendant's Reply Memorandum in Support of Its Motion to Dismiss Counts II—VI at 3; *see also id.* at 2 (conceding that "Harold Tokmakian has or had a claim under ERISA against HOME LIFE"),[13] and the court need not belabor the point. Accordingly, Home Life's status as a fiduciary under ERISA poses no independent obstacle to Buehler's stating causes of action under ERISA.[14] Therefore, the court dismisses without prejudice Counts II, IV, and VI as being preempted by ERISA.

## IV. THE DIRECT ACTION COUNTS

### A. Vexatious Delay in Settling Insurance Claims

In Count III Buehler brings a direct claim against Home Life under section 155 of the Illinois Insurance Code for vexatious and unreasonable delay in Home Life's processing of insurance claim. As an employer, however, Buehler has no standing to assert a section 155 claim for Home Life's allegedly unreasonable delay in payment to the beneficiary of one of its employees.

Although section 155 does not expressly delineate the persons entitled to bring suit, *see, e.g., Kush v. American States Ins.*

Co., 853 F.2d 1380, 1386 (7th Cir.1988), the purpose of the section is to "protect insured parties who are forced to expend attorneys' fees where the insurer refuses to pay under the terms of the policy ... and where such action ... was vexatious and without reasonable cause." *Stamps v. Caldwell*, 133 Ill.App.2d 524, 528, 273 N.E.2d 489, 492 (1971); *see also Saskill v. 4–B Acceptance*, 139 Ill.App.3d 143, 146, 93 Ill.Dec. 653, 655, 487 N.E.2d 97, 99 (1985) ("The general intent of [section 155] ... is to place the insured in as good a position as he would have been in had the insurer complied with the Insurance Code."). Accordingly, courts have concluded that the insured and his beneficiary are the only persons who have the capacity to sue under section 155. *See, e.g., Kush*, 853 F.2d at 1386; *Robertson v. Travelers Ins. Co.*, 100 Ill.App.3d 845, 56 Ill.Dec. 222, 427 N.E.2d 302 (1981), *rev'd on other grounds*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983); *Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Stamps*, 133 Ill App.2d at 528, 273 N.E.2d at 492.

In this case, Buehler, in its capacity as an employer, attempts to state a direct cause of action under section 155. But as a mere third party, it has no standing to bring the claim, since it could have been brought only by Harold Tokmakian, as beneficiary, or (absent ERISA preemption) by Buehler as subrogee to Tokmakian's rights.[15] Accord-

---

**13.** Nor does Home Life contest that Buehler, as subrogee to Tokmakian's rights, stands in his shoes and therefore has standing to sue under ERISA as a beneficiary. *Cf. Yampol*, 840 F.2d at 423–25 (Illinois Director of Insurance, acting under state court order to liquidate plan, was "fiduciary"; therefore, Director's assignee had standing to sue plan administrators for breach of their fiduciary duties).

**14.** The sole case upon which the plaintiff relies, *Munoz v. Prudential Ins. Co. of Am.*, 633 F.Supp. 564, 568 (D.Colo.1986), held that the insurer was not a fiduciary because the employer retained the right to review claims processed by the insurer; the plan was self-insured, and the defendant merely provided ministerial services related to claims processing. Unlike the employer in *Munoz*, Buehler obviously makes no claim that it retained the right to review processed claims.

**15.** The plaintiff attempts to distinguish *Stamp* and the other cases by claiming that section 155 extends to all parties to whom the insurer owes a duty—*any* duty. In *Stamp*, the plaintiff contends, the insurer owed no duty whatsoever to the plaintiff, while in this case Home Life owed Buehler a duty by virtue of its promise to provide prompt payment to the beneficiaries of Buehler employees. This argument, however, flies in the face of well-established precedent (appellate court cases to which this court must defer absent "persuasive data that the [Illinois Supreme Court] would decide otherwise," *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 1428 n. 3, 99 L.Ed.2d 721 (1988) (*quoting West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940))), and the plaintiff has cited no cases in which a third party was deemed to have standing under section 155.

ingly, the court dismisses Count III with prejudice.

### B. Breach of the Duty of Good Faith and Fair Dealing

In Count V Buehler brings a direct action seeking punitive damages for Home Life's alleged breach of its implied duty of good faith and fair dealing. Normally, punitive damages are not awarded for breach of a contract, since "[t]he sole purpose of contract damages is to compensate the non-breaching party[;] punitive damages are not available even for a 'wilful' breach of contract." *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 112 Ill.2d 87, 94, 96 Ill.Dec. 939, 941, 492 N.E.2d 181, 183 (1986). Nevertheless, punitive damages may be recoverable when the conduct causing the breach constitutes an independent tort for which punitive damages are permitted and when the complaint contains sufficient allegations of fraud, malice, wantonness, or oppression. *See, e.g., id.* at 95, 96 Ill.Dec. at 942, 492 N.E.2d at 184; *Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.*, 586 F.Supp. 926, 929 (N.D.Ill.1984).

One such "independent tort" may be an insurer's bad-faith refusal to make payments under the insurance policy. Although the precise scope of the doctrine has not been fully articulated, several courts have concluded that a "mere innocent breach of contract" is insufficient to state a claim. Rather, the plaintiff must plead the following three elements: 1) The insurer breached the contract; 2) the insurer refused to pay although he knew or must have known that he was liable under the contract; and 3) the insurer knew or must have known that its refusal to pay would result in substantial damage and injury to the insured. *See, e.g., Langendorf v. Travelers State Ins. Co.*, 625 F.Supp. 1103, 1108–09 (N.D.Ill.1985) (citations omitted).[16] Furthermore, Rule 9(b) imposes additional obstacles to pleading this claim, since mere conclusory allegations of fraud, maliciousness, deceptiveness, or unfairness are insufficient, absent the pleading of facts setting forth with particularity the circumstances or events supporting these allegations. Finally, as the foregoing analysis suggests, recovery under this cause of action has been limited to insureds,[17] since the rationale for the doctrine is grounded, in large part, on the special relationship between the insurer and the insured. *See, e.g., Ledingham v. Blue Cross Plan for Hosp. Care of Hosp. Serv. Corp.*, 29 Ill.App.3d 339, 345, 330 N.E.2d 540, 545 (1975), *rev'd as to costs*, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976).

In Count V Buehler seeks to recover punitive damages for Home Life's alleged bad faith in breaching its promise to Buehler to provide life insurance to Buehler employees. Buehler, obviously, is not an insured or the beneficiary of an insured under the life insurance policies. Nor is there any "special relationship" between the two parties justifying the imposition on Home Life of extraordinary duties toward Buehler: the situation here is not fraught with the potential for abuse because of Home Life's superior economic power, since both parties are sophisticated corporate entities—not naive, untutored, or uncounseled laymen. Home Life's promise to Buehler, moreover, is distinct from Home Life's promises and obligations to its insureds under the insurance policies. And although a duty of good faith and fair dealing is implied into virtually every contract, *see, e.g., A/S Apothekernes Laboratorium v. I.M.C. Chem. Group, Inc.*, 873 F.2d 155, 159 n. 2 (7th Cir.1989), a breach of this duty (at least outside the context of the insured/insurer relationship) does not constitute an independent tort, but is rather simply a breach of the underlying contract. *See Greer Properties, Inc. v. La-Salle Nat'l Bank*, 874 F.2d 457, 460–61 (7th Cir.1989) (implied duty of good faith acts as limit on discretion of parties; if

---

16. In any event, it is worthwhile to note that section 155 preempts claims based on an insurer's implied duty of good faith and fair dealing. *See, e.g., Kush v. American States Ins. Co.*, 853 F.2d 1380, 1385 (7th Cir.1988) (citing cases).

17. The plaintiff has cited no cases allowing tort recovery by a noninsured for an insurer's bad-faith refusal to pay.

contract vests one party with discretion, and discretion is exercised in bad faith, breach of contract occurs). Thus, Buehler cannot state a tort claim for Home Life's alleged breach of its implied duty of good faith and fair dealing.

 Nor may Buehler state a tort claim for willful and wanton misconduct, which is "essentially the separate tort of aggravated negligence" and is evidenced by a conscious and deliberate disregard for the safety of others. *Carrico v. Delp*, 141 Ill.App.3d 684, 690, 95 Ill.Dec. 880, 884–85, 490 N.E.2d 972, 976–77 (1986). To recover under this tort, the plaintiff would have to allege personal injury or damage to property—injuries that obviously are not present in this case. *See Morrow*, 112 Ill.2d at 95–96, 96 Ill.Dec. at 942, 492 N.E.2d at 184.[18] Thus, stripped of its unsavory insinuations of an insurance company's fleecing its vulnerable insured, Buehler's claim for breach of the implied duty of good faith and fair dealing reduces to a simple breach-of-contract claim—which Buehler already has pleaded in Count I. Count V adds nothing to Count I, other than to characterize the alleged breach, in conclusory fashion, as being "committed with fraud, actual malice, wil[lfullness], or ... gross negligence." Nevertheless,

> [w]hile the law does not condone breach of contract, it does not consider it wrongful or tortious. If a party desires to breach a contract, he may do so purposely so long as he is willing to place the other party in the position he would have been absent the breach.... At most, the plaintiff[ ] [has] alleged that [the defendant] acted in bad faith in breaching the contract. To sanction punitive damages on a bad faith theory would allow punitive damages whenever the breach was intentional. Thus, the exception would swallow up the general rule denying punitive damages for breach of contract.

*Carrico*, 141 Ill.App.3d at 690–91, 95 Ill. Dec. at 885, 490 N.E.2d at 977 (citations omitted). Accordingly, the court dismisses Count V with prejudice.

## V. CONCLUSION

For the foregoing reasons, the court dismisses Counts II, IV, and VI without prejudice and grants the plaintiff leave to file a third (and final) amended complaint alleging causes of action under ERISA. In drafting the ERISA counts, the plaintiff should take care to specify exactly under which sections of ERISA it is proceeding and to delineate precisely its prayers for relief. The court dismisses Counts III and V with prejudice. Buehler is to file its third amended complaint by October 16, 1989, and Home Life is to answer or otherwise plead by November 6, 1989.

---

**18.** This requirement of personal injury derives from the so-called "*Moorman* doctrine," under which plaintiffs cannot recover economic losses in tort, but rather are limited solely to their contractual remedies. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 88, 61 Ill.Dec. 746, 754, 435 N.E.2d 443, 451 (1982).