Antonio S. LOPEZ and Sonia
Lopez, Plaintiffs,

v.

The GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA and The Epic
Life Insurance Company, Defendant.

No. 92 C 2438.

United States District Court,
N.D. Illinois, E.D.

July 30, 1993.

Edward Eshoo, Jr., Michael Childress, Tenney & Bentley, Chicago, IL for plaintiffs.

Peter M. Sfikas and Mary F. Andreoni, Peterson & Ross, Chicago, IL for Guardian Life Ins. Co.

John C. Filosa and Michael A. Pollard, Baker & McKenzie, Chicago, IL for Epic Life Ins. Co.

## *MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

Plaintiffs Antonio and Sonia Lopez filed a complaint against two insurance companies in Illinois State Court. The insurance companies removed the claim to federal court. One of them, The Guardian Life Insurance Company of America (Guardian), now files a motion to dismiss for failure to state a claim. For the reasons stated below, the motion to dismiss is GRANTED.

### BACKGROUND

Between February 6, 1991 and August 16, 1991, Sonia Lopez incurred $140,128.22 in medical expenses related to a heart disorder. Ms. Lopez was covered by the group insurance plan provided through her husband Antonio's employer, Chicago Boiler Company. During the period of Ms. Lopez's illness, Chicago Boiler changed insurers. On March 31, 1991 Guardian discontinued coverage and on April 1, 1991 The Epic Life Insurance Company became the company's group insurer. Ms. Lopez has been unable to get either company to cover her medical expenses. As a result, she filed a three count complaint naming both companies as defendants.

Only Count I is directed at Guardian. Ms. Lopez claims that Guardian is liable for her medical bills because of an alleged violation of an Illinois insurance law. Specifically, she claims Guardian acted in contravention of section 367i of the Illinois Insurance Codes's requirement that:

. An insurer discontinuing a group health insurance policy shall provide to the policyholder for delivery to covered employees or members a notice as to the date such discontinuation is to be effective and urging them to refer to their group certificates to determine what contract rights, if any, are available to them. ILL.REV. STAT. ch. 73, para. 979i (1989)

Guardian now files this motion to dismiss Count I. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Guardian argues that Count I fails to state a claim upon which relief can be granted. Guardian argues that Ms. Lopez may not recover under the Illinois regulation because it has been preempted by federal statute. The federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144 (1985), (ERISA) provides broad preemption of state regulations of employee benefit plans. Guardian argues that the Illinois statute regulates such a plan and, pursuant to the Supremacy Clause of the Constitution, is superseded by federal ERISA regulations.

### ANALYSIS

For this motion to dismiss the Court must answer two distinct questions. At the outset, the Court must determine if the insurance arrangement between Guardian and Chicago Boiler is the type of employee benefit plan covered by ERISA at all. If it is, the Court

must answer the second question of whether ERISA preempts the plaintiff's claim under the Illinois Insurance Code.

*AN ERISA PLAN?*

■ The question of whether an insurance arrangement qualifies as an ERISA regulated employee benefit plan is determined by the level of employer participation in the plan. *Brundage–Peterson v. Compcare Health Services Ins.,* 877 F.2d 509, 510 (7th Cir.1989). If an employer plays an active role in the administration of an insurance package, the arrangement will be covered by ERISA. However, if an employer merely allows an insurer to offer a plan to its employees, the arrangement may avoid ERISA regulation. *Id.* at 511. The Department of Labor has adopted provisions defining the level of employer participation needed to bring a plan within ERISA regulation. A plan will not be regulated by ERISA if all of the following are met:

1. No contributions are made by an employer or employee organization;

2. Participation in the program is completely voluntary for employees or members;

3. The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

4. The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, or administrative services actually rendered in connection with payroll deductions or dues checkoffs. *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

Generally, an employer who creates, by contract with an insurance company, a group insurance plan and designates which employees are eligible to enroll in it is outside the exemption created by the Department of Labor regulation. *Brundage,* 877 F.2d at 511.

■ In the present case the insurance arrangement between Guardian and Chicago Boiler qualifies as an ERISA plan. The plaintiff submits by attachment to her complaint and incorporated into her pleadings by Federal Rule of Civil Procedure 10(c) a Certificate of Coverage outlining the employer's responsibilities under the plan. According to the Certificate, Chicago Boiler's responsibilities include notifying its employees of continuation rights in the event the plan is terminated, administration and revision of monthly payment schedules, and assumption of liability for continued health benefits should it fail to carry out such notification. These responsibilities surpass the maximum allowed for a non-ERISA insurance arrangement. Additionally, this plan must be considered an ERISA plan because of the requirements of the Illinois regulation invoked by the plaintiff. The regulation requires an insurance company to provide materials, containing information concerning plan termination, which the employer will then distribute. Such a level of employer participation alone is adequate, according to the third requirement of the Department of Labor standard, to bring the arrangement within the definition of an ERISA employee benefit plan.

*IS PLAINTIFF'S CLAIM UNDER THE ILLINOIS CODE PREEMPTED BY ERISA?*

■ The Court now turns to the question of whether ERISA preempts a claim brought under the Illinois Insurance Code for the recovery of insurance benefits.

The preemptive power of a federal statute is determined by congressional intent. *FMC Corp. v. Holliday,* 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Such intent may be explicitly stated in a statute or implied by a statute's structure and purpose. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

In adopting ERISA, congress meant to provide a uniform system for regulating employee pension and welfare plans. *FMC,* 498 U.S. at 64, 111 S.Ct. at 411. ERISA contains explicit provisions concerning the scope of state laws to be preempted. There are two

clauses that are relevant here. First, ERISA provides for an extremely broad federal preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The statute then provides a limited exception from preemption for certain state regulatory activity. In what is known as ERISA's "saving clause" the statute provides that it does not preempt "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

ERISA is not a model of legislative drafting. *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Applying these provisions is difficult because state regulated insurance companies often work closely with ERISA regulated employee benefit plans. In such a situation a permissible state regulation of insurance might seem to be preempted if it governs an employer's group insurance agreement and thus "relates" to an ERISA employee benefit plan.

The Supreme Court has refined ERISA's preemptive scope. In a series of opinions, the Court has defined the limits of ERISA's preemption clause. *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. DeDeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

■ If a state law specifically regulates the insurance industry, it may enjoy broad exemption from ERISA preemption. Such a law must be limited to the insurance industry itself. A regulation may not broadly regulate all insurance type arrangements. In *FMC* the Supreme Court addressed a Pennsylvania statute that prohibited all insurers from recovering from beneficiaries who recovered on claims in liability actions against third parties. The Court held that ERISA partly preempted this regulation. *FMC*, 498 U.S. at 60, 111 S.Ct. at 409. The Court

distinguished between employee benefit plans that used outside insurance companies and those that used a private insurance fund, and held that Pennsylvania could only apply the law to employee benefit plans using outside insurers. *Id.*, 498 U.S. at 64–65, 111 S.Ct. at 411. If a benefits plan was insured by an insurance company, a state could indirectly regulate it through insurance regulations such as the Pennsylvania law. But, if a plan was not insured, or was self-insured, a state's insurance laws could not regulate it.

■ Additionally, to avoid preemption a state law must be specifically directed at insurance, not just merely impact upon it. In *Pilot Life* the Supreme Court held that an employee's common law contract and tort claims for insurance benefits were preempted by ERISA. The plaintiff argued that the Mississippi law of bad faith had developed into a common law doctrine specifically regulating insurance. *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554. The Court rejected this argument, holding that even if the state's law of bad faith had come to be associated with the insurance industry, it had its roots in general principles of tort and contract law, and thus did not specifically regulate insurance. *Id.*

The Illinois Insurance Code qualifies as a state insurance regulation and is thus exempted from ERISA's preemption. The Code is a statute that by name and purpose regulates only the state's insurance system. Additionally, in this case, it is invoked to regulate a licensed insurance company, not a self-insured plan. In its motion to dismiss, Guardian argues that the Code cannot be considered a regulation of insurance because it does not regulate "insurance as a business." Guardian relies on language found in *Pilot Life* that suggests a state law must effect the "transferring or spreading of a policyholder's risk" in order to be exempt from ERISA preemption. *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554. A review of the Supreme Court's recent decisions in this area reveals that this is not the test. In fact, in *FMC* the Court specifically rejected such a requirement. The Court reasoned that to recognize subtle distinctions between what statutes were permissible because they apply

to insurance as a business, as opposed to regulations of more peripheral administrative functions, would be unworkable. Such a distinction would promote "endless litigation" to determine what constitutes a core insurance business activity. *FMC*, 498 U.S. at 64–65, 111 S.Ct. at 411. Thus, section 367i of the Illinois Insurance Code fits squarely within ERISA's "saving clause" and is not preempted.

■ But, even if the Illinois Insurance Code is not preempted, the question of ERISA's preemption of the plaintiff's claim is not disposed of. It is also necessary to determine whether, even if ERISA does not preempt a state regulation as a whole, it preempts the remedies available to an ERISA plan beneficiary. ERISA does expressly provide various civil enforcement measures. Under Title 29 U.S.C. § 1132 a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. In *Pilot Life*, the Supreme Court wrote broadly that this civil enforcement scheme was exclusive. *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556. But, as mentioned above, *Pilot Life* involved only a common law cause of action against an insurer, so it was left unclear if ERISA's remedies were exclusive in all cases.

The current case presents the Court with the prodigy of *FMC* and *Pilot Life*. On the one hand, *FMC* allows for a fairly broad range of state insurance regulations like the one relied upon here. On the other hand, *Pilot Life* recognizes exclusive ERISA remedies in common law suits for failure to pay insurance benefits. In this case, then, the Court must determine what remedies are available to an ERISA plan beneficiary who alleges the violation of a permissible state regulation of insurance.

The broad language of *Pilot Life* suggests the total preemption of state remedies by ERISA's enforcement provisions. The Court wrote, "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.* There is nothing in this reasoning to suggest a different level of preemption of remedies for a statutory claim as opposed to a common law claim. Lower court decisions have adopted this reading of *Pilot Life*. In *Buehler Ltd. v. Home Life Ins. Co.*, 722 F.Supp. 1554, 1562 (N.D.Ill.1989), this Court conceded that section 155 of the Illinois Insurance Code was a regulation of insurance not preempted by ERISA, but held that any remedy it might provide to a beneficiary of an ERISA plan was preempted. *Id.*, 722 F.Supp. at 1562. In *Kanne v. Connecticut General Life Ins. Co.*, 859 F.2d 96 (9th Cir. 1988), the Ninth Circuit came to the same conclusion. Referring to *Pilot Life*, the Court wrote, "We do not find it possible to read this language in a way that permits a state statute ... to supplement the ERISA civil enforcement provisions available to remedy improper claims processing." *Id.*, 859 F.2d at 100.

■ In the case at bar, the plaintiff alleges improper processing of benefits under an insurance plan. As the plan qualifies as an ERISA employee benefit plan, this Court must conclude that the broad language of *Pilot Life* mandates that any relief available to a beneficiary of such a plan must be based on an ERISA claim. The fact that the defendant may or may not have violated a permissible state regulation of insurance does not enable the plaintiff to recover contested benefits. The state of Illinois may enforce the Illinois Insurance Code by fining Guardian or denying it a license to practice insurance, but it may not enforce the Code by providing an ERISA plan beneficiary a state law cause of action for contested insurance benefits. Such a remedy is exclusively an ERISA concern.

Accordingly, as Count I of plaintiff's complaint fails to state a claim upon which relief may be had, the motion to dismiss is GRANTED.